# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SCHNEIDER FINANCE, INC., | ) | CASE NO. 5:21-cv-2032 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| THE PROFESSIONALS GROUP, LLC and | ) | |
| KEITH BURNETTE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Presently before the Court is plaintiff Schneider Finance, Inc.'s ("plaintiff" or "SFI") motion for default judgment, pursuant to Fed. R. Civ. P. 55(b). (Doc. No. 19.) The motion is unopposed. For the reasons that follow, default judgment is granted, in part in favor of plaintiff and against defendants The Professionals Group, LLC ("TPG") and Keith Burnette ("Burnette") (collectively, "defendants") on the complaint, and SFI is awarded damages and fees in the amount of $41,479.77, plus interest.

## I.    BACKGROUND

SFI is a Wisconsin corporation in the business of leasing and financing transportation equipment for use in hauling freight cargo across the country. (Doc. No. 1 (Complaint) ¶¶ 1, 7.) Defendant TPG is an Ohio limited liability company with its principal place of business in Akron, Ohio. (*Id.* ¶ 2.) TPG's sole member is Burnette, who is a citizen of Ohio. (*Id.* ¶¶ 2–3.)

On or about May 20, 2019, SFI and TPG entered into a Motor Vehicle Lease (the "Lease") for TPG to lease a 2018 Freightliner Cascadia EVO (the "Truck"). (*Id.* ¶ 8.) To induce SFI to enter into the Lease with TPG, Burnette, TPG's owner, executed an Unlimited Guaranty

(the "Guaranty") in which he individually, unconditionally, and irrevocably guaranteed all of TPG's obligations under the Lease. (*Id*. ¶ 9.) Pursuant to the Lease, TPG agreed to make ninety-five (95) consecutive weekly payments in the amount of $877.38 per week commencing in June 2019 and ending in April 2021. (*Id*. ¶ 10.) On or around August 13, 2021, SFI and TPG entered into the Lease Term Modification Amendment-Refinance (the "Lease Refinance"), under which the parties agreed to refinance the Lease by extending the term of the Lease through September 2022 and decreasing the weekly payments to $811.74 per week. (*Id*. ¶ 11.) At the time the parties entered into the Lease Refinance, TPG had an overdue balance in excess of $10,000. (*Id*.)

SFI filed this action on October 26, 2021,[1] alleging that TPG had defaulted on its obligations to SFI under the Lease and Lease Refinance by failing to make weekly lease payments. (*Id*. ¶ 13.) As of October 26, 2021, TPG had an overdue balance of $21,224.24. (*Id*.) The last payment that SFI received from TPG was on or around September 7, 2021. (*Id*.) On January 26, 2022, SFI terminated the Lease because of TPG's default. (Doc. No. 20 ¶ 18 (Memorandum of Law in Support of Motion for Entry of Default Judgment).)

Under the terms of the Lease, in the event of default, SFI was entitled to the accelerated balance of all lease payments and other amounts due, including future payments less only unearned leasing charges, fees related to taking repossession of the Truck,[2] reasonable attorneys'

---

[1] SFI's complaint included claims for breach of lease against TPG (Count I), breach of personal guaranty against Burnette (Count II), and conversion (Count III), replevin (Count IV), and unjust enrichment (Count V) against both defendants. (Doc. No. 1 ¶¶ 23–56.)

[2] TPG initially refused to return the Truck and intentionally prevented SFI from repossessing the Truck by blocking access to the driveway where the Truck was stored. (Doc. No. 1 ¶¶ 16–17.) On January 19, 2022, SFI filed a motion for immediate possession of the Truck. (Doc. No. 7.) On January 26, 2022, Burnette contacted SFI through counsel and provided SFI with the location of the Truck. (Doc. No. 20 ¶ 18.) SFI was able to repossess the Truck that same day. (*Id*.)

fees and fees of collection agencies, plus a 5% late charge on all unpaid amounts. (Doc. No. 1 ¶ 15 (citing Doc. No. 1-1 ¶ 2 (Lease Agreement)); Doc. No. 20 ¶ 20 (citing Doc. No 1-1 ¶ 21).)

On February 10, 2022, SFI applied to the Clerk for entry of default against defendants (Doc. No. 16 (Application for Default)), and the Clerk entered default on March 9, 2022. (Doc. No. 17.) SFI's motion for default judgment is supported by emails and other documentation evincing service on defendants and the declarations of Chen G. Ni and Patrick Feavel. As set forth above, SFI seeks an award of $57,445.93 which includes: (1) $19,226.55 for the approximately 22 weeks of unpaid weekly lease payments plus late and other fees; (2) $2,000.00 for the Repossession Fee; (3) $2,000.00 for the Repositioning Fee; (4) $6,000.00 for the Remarket Fee; and (5) $28,219.38 in attorneys' fees and costs. (Doc. No. 20 ¶ 22.) Additionally, in accordance with Ohio Rev. Code § 1343.03(A), SFI seeks prejudgment and post-judgment interest at a rate of three percent (3%) per annum. (*Id.* ¶ 23.)

## II.        STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the Clerk against defendant pursuant to Rule 55(a). (*See* Doc. Nos. 16, 17.) Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted).

Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but may conduct a hearing if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. In this case, the Court has examined the record before it and SFI's submissions in support

of its motion for default judgment and concludes that a hearing is not necessary to rule upon the motion.

The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing, among authority, 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")). Thus, defendants' default does not automatically entitle SFI to relief.

In order to rule upon SFI's motion, the Court must determine whether the factual allegations in the complaint deemed admitted by defendants' default, and reasonable inferences derived therefrom, are sufficient to satisfy the elements of SFI's legal claims for which it seeks default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (finding even though defendant has defaulted, the court must determine whether factual allegations accepted as true state a claim for relief with respect to the claims for which plaintiffs seek default (citation omitted)); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default judgment upon a legally insufficient claim." (citations omitted)). Legal conclusions in the complaint are not deemed admitted by a defendant's default.

In addition, "[a]n entry of default judgment requires some affirmation that the person against whom the default judgment is obtained is not (1) 'an infant or incompetent person' who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et*

4

*seq.*; or (3) an officer or agency of the United States." *Leach v. Lifeway for Youth, Inc.*, No. 1:07-cv-200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008) (citing Fed. R. Civ. P. 55(b), (c), (e); Advisory Committee Notes to Fed. R. Civ. P. 55, Supplementary Note.). As an Ohio limited liability company and its sole member, neither TPG nor Burnette is a minor, incompetent person, or subject to the Soldiers' and Sailors' Relief Act of 1940. *See Zinganything, LLC v. Tmart UK Ltd.,* No. 5:14-cv-629, 2016 WL 362359, at *2 (N.D. Ohio Jan. 29, 2016) (citing *Hitachi Med. Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:09-cv-847, 2010 WL 4638057, at *1 (N.D. Ohio Nov. 5, 2010) ("As corporations, the Defaulting Defendants are clearly not infants or incompetent persons.")). (*See* Doc. No. 1 ¶ 2.)

## III.     DISCUSSION

By defaulting, defendants are deemed to have admitted all SFI's well-pleaded factual allegations as to liability. *AF Holdings*, 976 F. Supp. 2d at 929 ("Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true.") (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007)). To be well-pleaded, the complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See Reid v. Herrera Harvesting LLC*, No. 2:17-cv-229, 2020 WL 2473491, at *1 (E.D. Tenn. May 13, 2020) (applying Fed. R. Civ. P. 8(a) to a complaint for which plaintiff seeks default judgment (quotation marks and citations omitted)).

### A.     Breach of Lease

Count One of the complaint raises a claim for breach of lease (contract) against TPG. To establish a claim against TPG for breach of contract under Ohio law, SFI must show: (1) the existence of a contract; (2) performance by SFI; (3) breach by TPG; and (4) damage or loss to

SFI. *See Spectrum Benefits Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926, 934 (Ohio Ct. App. 2007) ("A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." (internal quotation marks and citations omitted)). The well-pleaded allegations in the complaint, deemed admitted by TPG's default, establish that SFI is entitled to default judgment against TPG for breach of the Lease.

First, the complaint alleges that the Lease, as amended by the Lease Refinance, is "a valid and enforceable contract between SFI and TP[G]." (Doc. No. 1 ¶ 24.) Second, the complaint alleges that SFI "fully performed its obligations under the Lease and Lease Refinance." (*Id.* ¶ 26.) Third, the complaint alleges that TPG "has defaulted on its obligations to SFI under the Lease and Lease Refinance by, among other things, failing to make payments to SFI when and as due, despite demand therefor." (*Id.* ¶ 25.) In particular, the complaint alleges that TPG stopped making payments around September 7, 2021. (*Id.* ¶ 13.) And fourth, SFI was damaged by TPG's breach in an amount in excess of $75,000.00.[3] (*Id.* ¶ 27)

---

[3] When determining whether the amount in controversy required for diversity jurisdiction has been satisfied, the complaint is examined "at the time it was filed." *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). "[T]he amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper*, 916 F.2d at 340 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). "[I]f a good-faith claim of sufficient amount is made in the complaint, subsequent events that reduce the amount below the statutory requirement do not require dismissal." *Jones v. Knox Expl. Corp.*, 2 F.3d 181, 182–83 (6th Cir. 1993).

Having properly pleaded factual allegations supporting the essential elements of a claim of breach of contract under Ohio law, SFI is entitled to default judgment against TPG on the issue of liability under Count One of the complaint.

### B.   Breach of Personal Guaranty

Count Two of the complaint raises a claim for breach of personal guaranty against Burnette. A personal guaranty is a contract and so SFI must establish the same elements of a contract discussed above as to the personal guaranty: (1) the existence of a contract; (2) performance by SFI; (3) breach by Burnette; and (4) damage or loss to SFI. *See H.T. Hackney Co. v. NZR Retail of Toledo, Inc.*, No. 3:19-cv-353, 2021 WL 964096, at *3 (N.D. Ohio Mar. 15, 2021) ("A personal guaranty agreement is reviewed under the law of contracts and a reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document." (citing *SMS Fin. 30, LLC v. Frederick D. Harris, M.D., Inc.*, 112 N.E.3d 395, 403 (Ohio Ct. App. 2018))). The well-pleaded allegations in the complaint, deemed admitted by Burnette's default, establish that SFI is entitled to default judgment against Burnette for breach of the Guaranty.

First, the complaint alleges that the Guaranty is "a valid and enforceable contract between SFI and Burnette." (Doc. No. 1 ¶ 30.) Second, the complaint alleges that SFI performed its obligations under the Lease and Lease Refinance underlying the Guaranty. (*Id.* ¶ 26.) Third, the

---

Here the complaint alleged damages in the amount of $85,945.10, inclusive of late payments and fees, collection fees, and the fair market value of the Truck, which the defendants allegedly unlawfully retained at the time the complaint was filed. (Doc. No. 1 ¶ 22; *see also id.* ¶ 46 "The fair market value of the Truck is approximately $63,659.65.").) After the complaint was filed, SFI regained possession of the Truck, which rendered moot its claim for replevin and damages for the fair market value of the Truck. (Doc. No. 20 ¶ 18.) Dismissing the claim of damages for the fair market value of the Truck brings the amount in controversy to less than $75,000. However, because the complaint made a good-faith claim that met the amount in controversy and "subsequent events that reduce the amount below the statutory requirement do not require dismissal," *Jones*, 2 F.3d at 182–83, this Court retains jurisdiction over the action.

complaint alleges that Burnette has "defaulted on his obligations to SFI under the Guaranty by, among other things, failing to make payment to SFI when and as due, despite demand therefor" after TPG defaulted. (*Id.* ¶¶ 13, 32.) And fourth, SFI was damaged by Burnette's breach in an amount in excess of $75,000.00. (*Id.* ¶ 33.)

Having properly pleaded factual allegations supporting the essential elements of a claim of breach of contract under Ohio law, SFI is entitled to default judgment against Burnette on the issue of liability under Count Two of the complaint.

### C.  Conversion

Count Three of the complaint raises a claim for conversion against both defendants. To establish a claim for conversion against defendants under Ohio law, SFI must allege (1) SFI's rightful ownership of the converted property; (2) conversion of the property by the defendants; and (3) damages. *Haul Transp. of VA, Inc. v. Morgan*, No. CA 14859, 1995 WL 328995, at *3 (Ohio Ct. App. June 2, 1995). SFI's claim for conversion is premised on the unlawful retention of property (the Truck), so SFI must establish that (1) SFI demanded the return of the Truck from defendants after defendants exerted dominion or control over the Truck, and (2) that defendants refused to deliver the Truck to SFI. *Barnes v. First Am. Title Ins. Co.*, No. 1:06-cv-574, 2006 WL 2265553, at *8 (N.D. Ohio Aug. 8, 2006) (citing *Tabar v. Charlie's Towing Serv., Inc.* 646 N.E.2d 1132, 1136 (Ohio Ct. App. 1994)). The well-pleaded allegations in the complaint, deemed admitted by defendants' defaults, establish that SFI is entitled to default judgment against defendants for conversion.

First, the complaint alleges that SFI is the rightful owner of the Truck. (Doc. No. 1 ¶ 35.) Second, the complaint alleges that defendants wrongfully possessed the Truck after defaulting

under the terms of the Lease and Guaranty. (*Id.* ¶ 36.) Third, the complaint alleges that SFI suffered damages in the form of collection costs seeking repossession of the Truck. (*See id.* ¶ 39.) Further, SFI alleges that it demanded return of the Truck from defendants and that defendants not only refused but took intentional steps to prevent SFI from recovering the Truck. (*Id.* ¶¶ 16–17, 37.)

Having properly pled factual allegations supporting the essential elements of a claim of conversion under Ohio law, SFI is entitled to default judgment against defendants on the issue of liability under Count Three of the complaint.

### D. Replevin

Count Four of the complaint raises a claim for replevin against both defendants for the Truck. A replevin claim "is essentially a claim of ownership in which a person with the right to immediate possession of property seeks to recover possession of that property." *Harris v. Mayfield Heights*, 991 N.E.2d 1179, 1185 (Ohio Ct. App. 2013). The Court need not address whether SFI's complaint adequately alleges the elements of a replevin claim because this claim was mooted by SFI's repossession of the Truck, as acknowledged by SFI. (Doc No. 20 ¶ 18.)

### E. Unjust Enrichment

Count Five of the complaint raises a claim for unjust enrichment against both defendants. To establish a claim for unjust enrichment, SFI must allege (1) a benefit conferred by a SFI upon defendants; (2) knowledge by defendants of the benefit; and (3) retention of the benefit by defendants under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (citation omitted). SFI's claim of unjust enrichment seeks to compensate it for the same injury caused by TPG's breach of contract

and Burnette's breach of personal guaranty claims, for which the Court awarded default judgment. Plaintiffs are not entitled to recover again for that lost. The Court will not grant default judgment on plaintiff's unjust enrichment claim to avoid the potential for double recovery. *See Nat'l Auto Grp., Inc. v. Van Devere, Inc.*, No. 5:20-cv-2543, 2022 WL 80324, at *4–5 (N.D. Ohio Jan. 7, 2022) (citing cases).

### F.    Damages

While a plaintiff's well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same is not true for damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)); *Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc.*, No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2022) (the allegations of the complaint regarding the amount of damages are not controlling (citations omitted)). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enterpr.*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

### 1.    Compensatory Damages

SFI seeks $29,226.55 in compensatory damages from the defendants. (*See* Doc. No. 20 ¶ 22.) The Court finds that SFI has sufficiently established its right to compensatory damages under the Lease, as amended by the Lease Refinance, and the Guaranty for 22 weeks of unpaid weekly lease payments plus late and other fees. (Doc. No. 20-6, Exhibit A ¶ 2 (Lease Agreement).) The spread sheet appended to SFI's motion for default judgment demonstrates that

TPG stopped making timely payments to SFI under the Lease and, as of January 1, 2022, had an unpaid lease payment balance of $18,918.88 plus fees, totaling $1,211.52. (Doc. No. 20-6, Exhibit C (Lease Invoice Reconciliation); *see also* Doc. No. 20-6 ¶ 9 (Declaration of Patrick Feavel).) After offsetting the outstanding lease balance with TPG's "MMA balance" and TPG's security deposit (*see* Doc. No. 20-6 ¶ 9), SFI is entitled to compensatory damages for delinquent weekly lease payments in the amount of $19,226.55.

SFI also seeks $10,000.00 in compensatory damages for fees associated with its repossession of the Truck. The Court finds that SFI has sufficiently established its right to compensatory damages under Sections 20 and 21 of the Lease, as amended by the Lease Refinance, and the Guaranty for fees associated with the repossession, repositioning, and remarketing of the Truck. (Doc. No. 20-6, Exhibit A ¶¶ 20–21 (Lease Agreement).) Brian Feavel, SFI's Senior Manager, Business Support, averred in his affidavit that

> SFI also incurred additional costs and expenses for its efforts towards: (a) attempting to repossess the Truck on multiple occasions via its agent Asset Compliant Solutions (the "Repossession Fee"); (b) transporting the Truck to SFI's facility from where TPG surrendered the Truck (the "Repositioning Fee"); and (c) storing, refurbishing, reconditioning, and reselling the Truck after repossessing it from TPG on account of its default (the "Remarket Fee").

(Doc. No. 20-6 ¶ 8.) Specifically, SFI paid $2,000.00 for the Repositioning Fee, $6,000.00 for the Remarket Fee, and $2,000.00 for the Repossession Fee. (*Id.* ¶ 9.) SFI is entitled to compensatory damages for fees associated with repossession of the Truck in the amount of $10,000.00.

SFI has sufficiently established that it is entitled to $29,226.55 in total compensatory damages for the delinquent lease payments and the fess associated with repossession of the Truck.

### 2.    Prejudgment Interest

SFI also seeks prejudgment interest. Ohio Revised Code § 1343.03(A) requires the award of prejudgment interest to a successful party on a breach of contract claim as compensation to a creditor for the period of time between the accrual of the claim and judgment. *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995). "[O]nce a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A)." *Knott v. Revolution Software, Inc.*, 909 N.E.2d 702, 711 (Ohio Ct. App. 2009) (internal citations omitted). "The only issue for resolution by a trial court with respect to prejudgment interest under R.C. 1343.03(A) is how much interest is due." *Id.* The Court finds that SFI is entitled to prejudgment interest from the date the Lease was terminated through the entry of judgment at the rate set forth in Ohio Rev. Code § 1343.03(A).

### 3.    Post-Judgment Interest

The successful party on a breach of contract claim is also entitled to post-judgment interest under Ohio Rev. Code § 1343.03(A). *See State ex rel. Shimola v. City of Cleveland*, 637 N.E.2d 325, 326 (Ohio 1994) (Ohio Rev. Code § "1343.03(A) automatically bestows a right to postjudgment interest as a matter of law.") As the prevailing party on its breach of contract claims, the Court finds that SFI is entitled to post-judgment interest at the rate set forth in Ohio Rev. Code § 1343.03(A).

### 4.    Reasonable Attorneys' Fees

SFI seeks $28,219.38 in attorneys' fees. Section 21 of the of the Lease, as amended by the Lease Refinance, entitles SFI to "reasonable attorneys' fees" incurred by SFI in exercising its rights under the Lease. (Doc. No. 20-6, Exhibit A ¶ 21 (Lease Agreement).)

Consideration of SFI's request for reasonable attorneys' fees is based on the "lodestar" approach. *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar calculation starts with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.[4] *Hensley v. Eckhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The party seeking fees bears the burden of establishing entitlement to the amount claimed for the work performed based on billing records and rates charged. *Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610, 617 (6th Cir. 2007); *see Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

In support of its request for attorneys' fees and costs, SFI provides the declaration of its attorney, Chen G. Ni ("Attorney Ni"). (Doc. No. 20-5.) The declaration identifies the attorneys who participated in the litigation of this case, their years of experience, and their respective hourly rates. (*Id.* ¶¶ 1–2, 4, 6.) Attorney Ni also offers his own opinion that the fees charged by himself and his colleagues are reasonable for this type of litigation (*see id.* ¶¶ 6, 8), but SFI fails to offer an affidavit from outside counsel attesting to this fact. Further, appended to the declaration in support of fees and costs are the following: a summary of time entries and bills submitted to SFI related to this matter from October 8, 2021, through April 5, 2022 (Ex. A); a summary of costs incurred in this matter (Ex. B); and a calculation of prejudgment interest due (Ex. C).

Reasonable attorneys' fees are to be calculated based on the prevailing rate in the relevant

---

[4]The fee may then be adjusted by considering: (1) time and labor; (2) novelty and difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customary fee; (6) whether the fee is fixed or continent; (7) the time limitations; (8) the amount involved and the results obtained; (9) the

13

community. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The prevailing market rate is the rate "which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record . . . ." *Id.* SFI's counsel are from Illinois and Pennsylvania. But SFI has not argued that it was unable to locate competent local counsel to handle this case, nor has it argued that an exception to the community market rule is appropriate. As such, the Court will assess the reasonableness of the requested rates by looking to the prevailing market rates in the greater-Cleveland area.

The prevailing market rate can be demonstrated in a number of ways, including affidavit, fee award studies, citations to prior precedent regarding reasonable rate adjudications, and the Court's own experience in recognizing reasonable applicable prevailing rates. *See Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, 3:05-cv-7153, 2006 WL 2404140, at *3 (N.D. Ohio 2006) (citation omitted). As previously observed, neither SFI nor its counsel have provided any evidence on the prevailing market rate in the relevant area. However, the Court finds that the Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019, A Desktop Reference*, to be a particularly useful resource. Attorney Ni identified three attorneys who worked on this case. (Doc. No. 20-5 ¶¶ 1–2.) Attorney Ni is an associate with nine years of experience. (*Id.* ¶ 1.) According to the OSBA Report, the mean hourly rate for an attorney with six to ten years of experience is $225.00. OSBA Report at 44. Branden P. Moore ("Attorney Moore") is an associate who has been practicing law for an undisclosed number of years. (Doc. No. 20-5 ¶ 1.) Assuming he has roughly the same years of experience, the OSBA Report would also provide a mean hourly rate of $225.00. OSBA Report at 44. Attorney Michael

attorneys' experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the

14

R. Phillips "(Attorney Phillips") is a partner with twenty-eight years of experience. (Doc. No. 20-5 ¶ 2.) The mean hourly rate for general practice attorneys with twenty-six to thirty-five years of experience is $293.00. OSBA Report at 44. The Court acknowledges that these rates are now three years old and so, adjusting for inflation,[5] the Court finds Attorney Ni's and Attorney Moore's reasonable hourly rate to be $265.00 and Attorney Phillip's reasonable hourly rate to be $345.00. Even adjusted for inflation, the hourly rates charged by SFI's counsel in this case are considerably higher than those of the prevailing market rate[6] and neither SFI nor its counsel has provided *any* evidence that those rates are considered reasonable in the prevailing market or that a higher rate is justified in this case.[7] The Court will award Attorney Ni and Attorney Moore $265.00/hour and Attorney Phillips $345.00/hour, in accordance with evidence of prevailing reasonable rates of attorneys in the greater-Cleveland area.

As for the number of hours expended in this litigation, Attorney Ni avers that he spent 36.3 hours on this matter, Attorney Moore spent 2.3 hours on this matter, and Attorney Phillips spent 2.1 hours on this matter. (Doc. No. 20-5 ¶ 6.[8]) The summary of the legal services, as detailed in the timesheet, demonstrates that these services were the kind that competent counsel

---

attorney-client relationship; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430, n.3 (citation omitted).

[5]*CPI Inflation Calculator*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/data/inflation_calculator.htm.

[6]Specifically, the affidavit provides that Attorney Ni bills his services at an hourly rate of $674.25. Attorney Moore bills his services at an hourly rate of $678.60. Attorney Phillips bills his services at an hourly rate of $909.15. (Doc. No. 20-5 ¶ 4.)

[7]Besides difficulties serving defendants, neither SFI nor its counsel has provided any reason to support such a high hourly rate. There is no evidence in the record that the facts of this case were unusually complex or required any specialized skill set or litigation experience. Further, although counsel received an excellent result for SFI, it did so without having to litigate this case through contested motion practice, hearings, or trial, suggesting counsel was free to pursue other matters at the same time it represented SFI. There is nothing in the record to support SFI's counsel's requested hourly rates.

[8]The chart in Attorney Ni's declaration states that counsel worked a combined 37.5 hours on this matter. (Doc. No. 20-5 ¶ 6.) However, a review of the time sheet attached to the declaration demonstrates that counsel actually worked a combined 40.7 hours.

would be expected to perform in litigating this type of case. (*See id.*, Ex. A.) Moreover, the Court finds that the number of hours expended on each task to be reasonable in light of the nature of the litigation, posture of the case at judgment, difficulties serving the defendants, and briefing necessitated by defendants' resistance to returning the Truck to SFI.

Multiplying the Court-ascertained reasonable hourly rate of $265.00 by the number of hours Attorney Ni and Attorney Moore expended in this litigation (38.6) and multiplying the Court-ascertained reasonable hourly rate of $345.00 by the number of hours Attorney Phillips expended in this litigation (2.1), the Court arrives at a total award of reasonable attorneys' fees of $10,953.50. *See, e.g.*, *Hines v. City of Columbus*, 676 F. App'x 546, 549, 555–57 (6th Cir. 2017) (affirming district court's reduction of hourly rate to "align with rates reported in the Ohio State Bar Association Report, The Economics of Law Practice in Ohio"); *Richard v. Caliber Home Loans, Inc*., 832 F. App'x 940, 948 (6th Cir. 2020) (approving district court's overall reduction of the requested fee by more than 70 percent to reflect excessive hourly rates, serious billing deficiencies, and limited success).

Plaintiffs also seek costs totaling $1,299.72, consisting of the filing fee and administrative costs, including process servers. (Doc. No. 20-5 ¶ 7.) The Court finds these costs to be reasonable and supported by the record. Accordingly, the Court awards attorneys' fees and costs in the amount of $12,253.22.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is GRANTED on Counts I, II, and III of plaintiff's complaint. The Court awards compensatory damages in the

amount of $29,226.55 against defendants TPG and Burnette, jointly and severally,[9] along with prejudgment and post-judgment interest at the statutory rate. The Court also awards reasonable attorneys' fees and costs in the amount of $12,253.22 against defendants TPG and Burnette, jointly and severally. This case is closed.

   **IT IS SO ORDERED**.


Dated: November 21, 2022

_____
   **HONORABLE SARA LIOI**
   **UNITED STATES DISTRICT JUDGE**

---

[9]The Guaranty makes Burnette jointly and severally liable for delinquent payments under the Lease and all costs, expenses, and attorneys' fees paid or incurred in endeavoring to enforce the terms of the Lease. (Doc No. 1-2, at 2 (Guaranty).)

17